IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Patricia Ann Thomas, | ) | C/A No. 3:20-1333-MGL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER AND** |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| South Carolina Department of Mental Health, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Patricia Ann Thomas, a self-represented litigant, brings this employment action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., raising claims of retaliation and hostile work environment based on race.[1] Thomas files this action *in forma pauperis* under 28 U.S.C. § 1915. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Defendant South Carolina Department of Mental Health's ("DMH") motion for summary judgment. (ECF No. 92.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Thomas of the summary judgment and dismissal procedures and the possible consequences if she failed to respond adequately to DMH's motion. (ECF No. 93.) Thomas filed

---

[1] The court previously narrowed the number and scope of the causes of action in this case by granting the defendant's motion for judgment on the pleadings and granting Thomas's motion to amend the complaint. (ECF Nos. 61 & 78.)

a response in opposition to the motion (ECF No. 98), and DMH filed a reply (ECF No. 99).[2] Having reviewed the record presented and the applicable law, the court concludes that DMH's motion should be granted.[3]

## BACKGROUND

The following facts are either undisputed or are taken in the light most favorable to the plaintiff, to the extent they find support in the record. Thomas began working for DMH in February 2013 at the Columbia Area Department of Mental Health. Her first job at DMH involved answering the telephone, greeting clients, and logging them into the system to receive emergency mental health assistance. In 2016, Thomas applied for and received a promotion to work with the Homeless Outreach Program, but the program's grant funding expired. Consequently, on September 23, 2016, DMH reassigned Thomas to work in community long-term care at the

---

[2] Thomas also filed a "motion to amend" her response (ECF No. 101) that is construed as a motion to file a sur-reply. See Khoury v. Meserve, 268 F. Supp. 2d 600, 605 (D. Md. 2003) ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."), aff'd, 85 F. App'x 960 (4th Cir. 2004); DiPaulo v. Potter, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010) ("Generally, courts allow a party to file a surreply only when fairness dictates based on new arguments raised in the previous reply."). Here, DMH's reply did not contain any new issues of fact or law that Thomas could not have addressed in her response. Therefore, Thomas's motion is denied. See also F.D.I.C. v. Cashion, 720 F.3d 169, 176 (4th Cir. 2013) (finding the district court did not abuse its discretion in granting a motion to strike a sur-reply because the district's local rules made no provision for sur-replies, the reply brief did not raise a new legal theory or new evidence, and the court's decision was not inequitable); Genesis Health Care, Inc. v. Soura, 165 F. Supp. 3d 443, 456 (D.S.C. 2015) (allowing the plaintiff to file a sur-reply to address an issue first raised after a motion was fully briefed).

[3] Thomas also moves to strike defenses from DMH's Answer and to strike a document exchanged in discovery. (ECF Nos. 80 & 84.) Thomas's motion to strike matters from DMH's pleading is denied because it is untimely under Federal Rule of Civil Procedure 12(f)(2). (ECF No. 80.) Thomas's motion to strike a document exchanged in discovery is denied because the Federal Rules of Civil Procedure provide no mechanism to "strike" a document that is not contained in the record, nor would granting such a motion serve any purpose. To the extent Thomas seeks to attack the evidentiary value of the document, she has been permitted to do so in her briefing to the court.

Clinical Care Coordination office, which assists DMH clients in navigating various social services, including those for mental illness, food, shelter, and clothing. In December 2016, Thomas's position was reclassified to Care Coordinator, which included a salary increase. As a Care Coordinator, Thomas worked as a case manager in DMH Community Health Centers to assist DMH clients in finding and obtaining housing, education, or other benefits. Thomas's position required that she code and bill her time so that DMH could seek reimbursement for its services through the South Carolina Department of Health and Humans Services and Medicaid. Thomas billed her time on a "clinical service note" each time she met with a client.

In due course, Thomas sought an additional salary increase in addition to the increase she received when her position was reclassified in 2016. DMH denied that request and on October 12, 2017, Thomas filed a charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC") alleging race discrimination and retaliation. Thomas claimed that she was paid less than white co-workers and that she was retaliated against for having previously filed a charge of discrimination in 2016. SCHAC issued a "no cause" finding as to the 2017 charge on May 28, 2018 and Thomas did not file a lawsuit.

Thomas received two written warnings about her billing practices while she worked as a Care Coordinator. On June 14, 2017, Monica McKiver, Thomas's supervisor at the Santee Lynches community health center, counseled Thomas that her clinical service notes were entered late in contravention of DMH and Medicaid policies. Similarly, on June 11, 2018, Tanzala Shanklin, Thomas's supervisor at the Waccamaw community health center, informed Thomas that she had fifteen late clinical services notes and four late progress summaries. Shanklin reiterated to Thomas that DMH's policy required that Thomas input all information immediately after meeting with clients. Shanklin further counseled Thomas that her case load would be monitored

and that she would be disciplined if improvement was not made. Shanklin also had meetings with Thomas about her billing practices on July 9, 2018 and September 18, 2018.

In August 2017, Thomas sent a confidential complaint to DMH's human resources department claiming that the DMH clinic where she worked in Manning, South Carolina was a hostile work environment. Thomas alleged that the clinical director of that office instigated disputes between employees. As an example, Thomas noted that she had a disagreement with a co-worker's church member that was "brought in the office" and the clinical director "was instigating the situation." (Pl.'s Dep. at 52; ECF No. 92-2 at 54.) The Director of Clinical Care Coordination and Community Long-Term Care, Marti Landrum, questioned Thomas about the complaint in the presence of the clinical director. Thomas then complained to Employee Relations Director Joseph Miller about Landrum publishing her complaint, which Thomas believed should have remained confidential.

On August 31, 2017, Thomas received a written warning from McKiver, then her immediate supervisor, for "failure to maintain satisfactory or harmonious working relationships with other employees or supervisors" because Thomas had an argument with another employee in the reception area of the Santee-Wateree Mental Health Center and continued the argument over the phone from her workstation even after her supervisor told her to end the argument. The written warning provided space on the same form for Thomas to provide comment, on which Thomas wrote only: "Retaliation." (Thomas Dep. Ex. 14, ECF No. 92-4 at 55.)

In November 2018, Thomas was due to renew her billing credentials. That same month, two DMH employees reported to Landrum that Thomas had called them and seemed confused about DMH's billing practices. In the first instance, Katie Cooper from DMH's billing department reported to Landrum that in October, Thomas called her regarding a client's bill. Cooper felt that

Thomas was unknowledgeable about billing and cited as an example Thomas's statement to Cooper that Thomas had "collected $3,500 and it went to the clinic." (ECF No. 92-4 at 56.) Similarly, billing supervisor Tanika Combee reported to Landrum that she also spoke to Thomas in October and Thomas stated that she had collected over $3,500 in payments for the agency and she was not getting paid for her services. Combee reported that Thomas continued talking about how much money DMH was receiving, how much money Thomas was worth, and that the agency was not paying Thomas for her services. Combee reported that because of the phone call, Combee was under the impression that Thomas was not aware of her responsibilities. Landrum relayed Cooper and Combee's concerns to Miller, the employee relations director.

Miller asked Thomas to provide a statement regarding Cooper and Combee's concerns, but Thomas refused and claimed that Landrum was accusing her of stealing $3,500 that belonged to DMH.[4] Thomas eventually provided a statement on January 9, 2019 after speaking with her immediate supervisor (Landrum) and Miller. However, the next day, Thomas emailed DMH's central human resources office complaining that Landrum harassed her over the statement and claiming that she was detained and interrogated for approximately two hours. Thomas claimed Landrum was retaliating against her because she complained about Landrum's harassment.

As to Thomas's credentials, the credentialing committee refused to provide Thomas with full credentialing rights, which had to be renewed every two years. Instead, the committee granted Thomas a 120-day provisional credential. The committee's decision was based on Landrum's report that Thomas had disciplinary issues within the past two years.

---

[4] For clarity, Thomas continues to argue that she was accused of "stealing" $3,500, but nothing in the record supports the claim that she was accused of theft. Rather, the record shows that DMH employees appeared to be concerned that Thomas did not understand how the reimbursement process worked, and as a result, that Thomas may have inflated her billing so that DMH received unwarranted reimbursements. (ECF No. 92-4 at 56-57.)

Also in January 2019, Landrum reported to DMH's audit department that based on routine quarterly audits of Thomas's billing, Thomas was suspected of inappropriate billing in four out of eight quarters for fiscal years 2017-18. Landrum noted that each audit was reviewed with Thomas, but Thomas's audit results continued to show inappropriate billing. In light of this report, DMH conducted a more thorough audit of Thomas's billing between July 1, 2018 and December 31, 2019. The audit revealed mistakes that required DMH to pay back $11,275 in reimbursements. Landrum described Thomas's errors as "extensive," and enough to jeopardize DMH's contract with the South Carolina Department of Human Resources. (Landrum Decl. ¶ 14, ECF No. 96-2 at 5.) During the time audited, Thomas provided proper documentation to support the bills only eighteen percent of the time. Thomas's billing for initial client assessment was inflated, almost always billing for 120 minutes when her documentation did not justify that amount of time. Other errors included billing for nonbillable time on half of the bills, submitting fifty-five percent of the bills late, and billing for activities that were not on the client's care plan. Consequently, DMH placed Thomas on administrative leave and notified Thomas that the agency intended to terminate her employment. On March 25, 2019, Thomas was terminated for violation of DMH's policies, specifically noting that Thomas's billing included errors and did not meet DMH's standards, even after Thomas was counseled on billing.

Thomas filed a charge of discrimination on February 11, 2019. (ECF No. 92-5 at 81.) On the charge of discrimination form, Thomas checked a box indicating that she was retaliated against. She did not check any other boxes denoting other types of discrimination. Specifically, Thomas claimed she was intimidated, harassed, subjected to retaliation, disciplined, and discharged between November 27, 2018 and February 11, 2019. Thomas alleged she was accused of stealing

$3,500 and required to write a statement, and that she was harassed and retaliated against for filing a previous charge of discrimination in 2017.

## DISCUSSION

**A.     Summary Judgment**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (internal quotation marks and citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and

look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Erickson v. Pardus, 551 U.S. 89 (2007), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Methods of Proof in Employment Cases**

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof. First, she may attempt directly to prove discrimination with direct or circumstantial evidence. Alternatively, when direct proof is lacking, a plaintiff may proceed under the McDonnell Douglas burden-shifting framework. See Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Smith v. First Union Nat'l Bank, 202 F.3d 234, 248 (4th Cir. 2000) (holding that the McDonnell Douglas framework applies to retaliation claims under Title VII). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason,

"the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks and citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[], but [was] a pretext for discrimination." Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the

intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

### C.      Thomas's Claims

#### 1.      Retaliation

Title VII makes it unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Ocheltree v. Scollon Prods, Inc., 335 F.3d 325, 331 (4th Cir. 2003). Under Title VII, an employer may not retaliate against an employee for engaging in activity protected by the statute. See 42 U.S.C. § 2000e-3(a). The requisite elements for a *prima facie* case of retaliation typically include: (1) the employee engaged in a protected activity; (2) the employer acted adversely against him or her; and (3) there was a causal connection between the protected activity and the asserted adverse action. Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). Further, "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013).

Initially, the court notes that Thomas appears to rely on separate protected activities to support her retaliation claim based on race: (1) Thomas's December 2018 and January 2019 internal complaints about harassment regarding her billing practices and purported accusation of stealing and (2) Thomas's 2017 charge of discrimination. As to Thomas's internal complaints

about harassment, DMH argues that those complaints are not a protected activity. The court agrees.

While complaints raised through an employer's internal procedures can be a protected activity that supports a retaliation claim, see Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 122 (4th Cir. 2021), the complaint must concern discrimination made illegal by Title VII. See 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter."); Chang Lim v. Azar, 310 F. Supp. 3d 588, 604 (D. Md. 2018) ("However, to qualify as protected activity, an employee's complaints must still communicate 'a belief that the employer has engaged in a form of employment discrimination' based on a protected class.") (quoting Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn., 555 U.S. 271, 276 (2009)). Here, Thomas does not even allege in her Amended Complaint that her internal complaints in December 2018 or January 2019 were related to opposition to race discrimination. (Am. Compl., ECF No. 64 at 10-12.) Nor does Thomas point to any evidence in the record that her internal complaints were in opposition to race discrimination. Thomas argues that she was harassed because she was falsely accused of stealing money, which she "reasonably believed was discriminatory and unlawful" (Pl.'s Resp., ECF No. 98 at 11), but she fails to provide any argument that she believed the harassment was unlawful because it was based on a protected characteristic under Title VII. Therefore, Thomas fails to make a *prima facie* showing of retaliation based on her internal complaints about how she was treated based on her billing practices.[5]

---

[5] Even assuming Thomas could make a *prima facie* case of retaliation based on the internal complaints, the claim would fail on the merits for the same reason her retaliation claim based on her 2017 charge of discrimination fails, as explained below.

As to Thomas's 2017 charge of discrimination, DMH argues that it proffered legitimate, non-discriminatory reasons for Thomas's termination, and Thomas fails to meet her burden of showing those reasons were pretextual.  The court agrees.  DMH presented evidence that Thomas was terminated for improper billing that was so extensive that it could have jeopardized DMH's contract with the South Carolina Department of Health and Human Services.  (Landrum Decl. ¶ 14, ECF No. 96-2 at 5.)  Thomas does not dispute that her billing errors violated multiple DMH policies.  (Id ¶ 17, ECF No. 96-2 at 6.)  DMH also considered Thomas's behavior, disciplinary record, and need for extensive retraining in deciding to terminate her position.  (Id.)  Consequently, DMH has proffered legitimate, non-discriminatory reasons justifying Thomas's termination—poor work performance and behavior and disciplinary issues.  See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) ("Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision."); Sadeghi v. Inova Health Sys., 251 F. Supp. 3d 978, 993 & n.22 (E.D. Va. 2017) (collecting cases finding that behavior and disciplinary issues are legitimate, non-discriminatory reasons for termination), aff'd, 711 F. App'x 174 (4th Cir. 2018).

Thomas, on the other hand, has not forecast any evidence that DMH's non-discriminatory reasons for terminating her were pretextual.  Thomas argues that "there were no issues" with her work performance until Thomas claimed that Landrum accused her of "stealing."  (Pl.'s Resp., ECF No. 98.)  However, the record conclusively shows that Thomas's work performance—her billing practices—caused Landrum to investigate Thomas's billing practices (which Thomas claims, without support, amounted to an accusation that Thomas stole money). (Thomas Dep. Exs. 15 & 16, ECF No. 92-4 at 56-57.)  Thomas also argues that her performance evaluations show that she exceeded her performance expectations on average, but she does not point to any evidence in

the record to support that assertion. (Pl.'s Resp., ECF No. 98 at 16.) Thomas further argues that she received two promotions, but those promotions predated the proffered performance and behavior issues. Thomas argues that she could not be terminated for billing errors without DMH prosecuting her for Medicaid fraud, but Thomas provides no support for such an argument.[6]

Consequently, Thomas's Title VII retaliation claim fails as a matter of law whether it is based on her internal complaints—for which she fails to make a *prima facie* showing—or her 2017 charge of discrimination—for which she fails to show that DMH's non-discriminatory reasons for terminating her were pretextual.

---

[6] To the extent Thomas argues that the temporal proximity between her 2017 charge of discrimination and her termination is evidence of pretext, the length of time between the protected activity and purported retaliation is too remote to create a triable issue of fact without other supporting evidence. See Mercer v. Arc of Prince Georges Cty., Inc., 532 F. App'x 392, 397 (4th Cir. 2013) ("While timing is a relevant factor, it will rarely be independently sufficient to create a triable issue of fact.") (citing Simpson v. Office of the Chief Judge of the Cir. Ct., 559 F.3d 706, 713 (7th Cir. 2009)); Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (stating that cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action uniformly hold that the proximity must be "very close").

   2.   **Hostile Work Environment**[7]

DMH argues Thomas fails to make a *prima facie* showing for a hostile work environment claim because she fails to point to any evidence that she was subjected to offensive conduct because of her race. The court agrees.

To prevail on a hostile work environment claim,[8] a plaintiff must show (1) she experienced unwelcome harassment; (2) based on her race; (3) which was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive atmosphere; and (4) which is imputable to the employer. Perkins v. Int'l Paper Co., 936 F.3d 196, 207-08 (4th Cir. 2019); Okoli v. City Of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011). Here, Thomas claims that she was harassed over her billing practices and, as she characterizes it, Landrum's and others' accusations that she stole $3,500. But Thomas points to no evidence that her treatment over those issues was based on her race. Even assuming Thomas could make a *prima facie* showing of a hostile work environment, as explained above, DMH has provided legitimate, non-discriminatory reasons for Thomas's termination, and Thomas fails to point to any evidence that those reasons were a pretext for discrimination. Thomas argues that a white comparator who was similarly situated to Thomas received a lesser punishment for the same infraction, but the only evidence Thomas points to in support of that argument is a copy of an email she sent to DMH's counsel seeking an extension of

---

[7] DMH argues that it is entitled to summary judgment as to Thomas's hostile work environment claim because she failed to exhaust her administrative remedies. Because DMH is entitled to summary judgment on the merits of Thomas's hostile work environment claim, the court need not address DMH's exhaustion argument.

[8] To the extent Thomas asserts a retaliatory hostile work environment, she has failed to forecast evidence of such for all of the same reasons described above. See Wells v. Gates, 336 F. App'x 378, 387 (4th Cir. 2009) (providing the elements of a hostile work environment claim based on retaliation); Fordyce v. Prince George's Cty. Md., 43 F. Supp. 3d 537, 552 (D. Md. 2014) ("To survive summary judgment, Plaintiff must show a *prima facie* case for retaliation, including evidence that her employer's adverse actions amount to a hostile work environment.").

time to amend her complaint, in which Thomas mentions the comparator.  (ECF No. 98-11 at 3.) Because that email is hearsay that is not admissible at trial, see Fed. R. Evid. 801 & 802, such evidence cannot be used to support her claim on summary judgment.  Consequently, Thomas fails to meet the McDonnell Douglas burden shifting framework as to her hostile work environment claim.

## RECOMMENDATION

Based on the foregoing, the court recommends that DMH's motion for summary judgment be granted.  (ECF No. 92.)

_____

October 26, 2021                                           Paige J. Gossett
Columbia, South Carolina                         UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).